No. 1—WILLIAM BUTLER *et al.*, plaintiffs in error, *vs.* SOPHRONIA WEATHERS, defendant in error.

No. 2—T. D. FLIPPER, plaintiff in error, *vs.* JAMES J. REID *et al.*, defendants in error.

No. 3—J. C. THORNTON & Co., for use of, etc., plaintiffs in error, *vs.* WILLIAM FAULK *et al.*, defendants in error.

The single fact that the defendant lost a large amount of property by the late war, without any proof that the plaintiff was in fault, or that it was caused in any manner by the plaintiff's act, raises no equity for the reduction of a debt contracted before the war.

Relief Law. No. 1, tried before Judge HARRELL. Early Superior Court. April Term, 1869. No. 2, before Judge PARROTT. Catoosa Superior Court. March Term, 1869. No. 3, decided by Judge COLE. Twiggs Superior Court. March Term, 1869.

No. 1.—In 1867, Sophronia Weathers sued Howell & Butler on their joint and several promissory note for $145 00, made the 17th of February, 1862, and due one day after its date. They plead a set-off of $20 00, and payment of $5 00 (the dates do not appear,) and claimed the benefit of the Relief Laws. Plaintiff admitted a payment on the note of $15 00, made the 25th of November, 1865. One of the defendants proved the set off and the $5 00 payment, and that it was no part of the $15 00 payment. Besides this, the only evidence was that, "the note was given for land," and that each of said defendants was worth $4,000 00 or $5,000 00 at the date of the note, and only $400 00 or $500 00 at the end of the war, and that "he lost all of this property by the result of the war." The jury found for the plaintiff $135 00, principal and interest.

A new trial was moved for, upon the ground that said verdict was wrong under said facts, and was overruled. That is brought here for review.

FIELDER & POWELL, for plaintiffs in error.

T. F. JONES, for defendant.

No. 2—James J. Reid, as principal, and C. D. McFarland as security, were sued by Flipper upon a promissory note made by them, (and others not served,) on the 24th of September, 1860, for $920 00, payable to N. Pope, fifteen months after date. The defendants relied upon certain alleged misrepresentations of Pope and upon the Relief Law.

It was shown that Flipper paid full price for the note, but after it was due. RIED testified that the note was given to Pope for fifteen pony-mules and two horse colts, in the Sequatchee Valley, Tennessee. They were so wild that they could not be easily examined, and the parties relied wholly on Pope's representations concerning them. The price fixed for the horses was $150 00 each, and they were worth that sum ; but the mules were four or five years old, and worth about $25 00 each, whereas, Pope said they were from six to

twelve months old, and if this had been true they would have been worth $55 00 each ; they were small, wild and vicious.

Several other witnesses testified to having examined a lot of fifteen mules brought by Reid from Tennessee, that they were vicious little fellows, etc., from two to four years old, and worth very little, but had they been as young as six months or a year they would have been worth $55 00 each. Reid further testified, that the mules examined by the witnesses were the same for which the note was given, and that, " before the war, and at the date of the note, he was worth about $2,000 00, and lost, without his fault, about $1,000 00, and is now worth about half the amount he was when he gave the note." This quoted evidence came in over plaintiff's objections. The Court charged the jury that they could not make contracts for parties, but must enforce such as the parties made ; that purchasers should examine property and not rely upon the mere representations of sellers ; that recommendation does not amount to warranty ; that the Relief Law was constitutional, and the jury might take into consideration the losses of property owned by defendant at the date of the contract, and reduce the amount they should find for the plaintiff on account of such losses, according to their opinions of the principles of equity.

The verdict was for the plaintiff for $187 50, with interest and costs. A new trial was moved for, upon the grounds that the Court erred in admitting said evidence as to loss of property, and in the charge on that subject, and because the verdict was contrary to the balance of the charge, contrary to law etc. The new trial was refused and that is assigned as error. (Only Reid's counsel acknowledged service of the rule *nisi* for a new trial.) McFarland's counsel moved to dismiss the motion because he was not served. This was overruled, and he excepts to that in the same bill of exceptions.

Butler *et al.*, *vs.* Weathers.

E. D. Graham, D. A. Walker, for plaintiff in error.

Dodson & Payne, for defendant in error, as to the want of service of McFarland, cited Code, section 3673; 13th M. & W., 493; 1st Pick R. 121; 18th John. R., 480; 14 Mass. R., 148; and said Pope's representations amounted to a warranty, citing 36th Ga. R., 648, and sections 2906, 2907, 2592, 3116, 3117, 3118, of the Code.

No. 3—On the 7th of January, 1861, M. E. Solomon and William Faulk made and delivered their note for $100 00, to J. C. Thornton & Co. The payees sold it to Increase C. Plant, and the makers were sued upon it in the name of the payees for Plant's use. The sole defence was the Relief Law. And the evidence adduced by defendants was only this : The note was given in part payment for a buggy ; about the time it was due Solomon's brother looked for Thornton to pay the note, but did not find him, and Solomon hearing that Thornton was at Cuthbert addressed him there, but received no reply; in January, 1861, Solomon was worth from $5,000 00 to $6,000 00; " he lost about all he had by the war;" Faulk, in January, 1861, was worth from $80,000 00 to $150,000 00, had then many slaves, which had been emancipated, and at the time of the trial had only about two thousand acres of land, and was worth only about $15,000 00 or $20,000 00, "by reason of losses sustained by the war."

Plaintiff's counsel requested the Court to charge the jury, that they should find without reference to said evidence of loss of property by the defendants. He refused so to charge, but charged that they might consider said evidence and find for the plaintiff "such a verdict as in their judgment was just and equitable, the principal and interest, or the principal only, or a less amount than the principal, as they might think was equitable and just under the evidence." The jury found for the plaintiff only $50 00. Plaintiff's counsel moved for a new trial, upon the grounds that the refusal to charge as requested and the charge as given were errors, and because the

Butler *et al.*, *vs.* Weathers.

verdict was contrary to law, strongly and decidedly against the weight of evidence, etc., etc.

The overruling of that motion is assigned as error on said grounds.

LANIER & ANDERSON for plaintiffs in error.

S. HUNTER, for defendants in error.

McCAY. J.

These cases all turn on the Act of 1868, known as the Relief Law. That Act provides that the jury, under certain circumstances, may reduce the plaintiff's claims according to the "equities" between the parties. We held at the last term of this Court, in the case of Cutts & Johnson vs. Hardee, 38th Georgia Reports, 381, that this word "equity," as used in this statute, did not mean whim of the jury, nor mere mercy, but that "fair and honest duty which each owes to the other, growing out of the contract, or arising between them since." In each of the cases at the head of this opinion, there was no pretense of any equity, except that "at the date of the contract the defendant below was worth a certain amount, and that at the trial he was worth much less." It did not appear that this was in any way the "fault" of the plaintiff, or that he was in any, even the most distant, way connected with this change in the circumstances of the defendant. We do not think this is any "equity," and we, therefore reverse the two cases of Thornton & Co. vs. Faulk *et al.*, and Flipper vs. Reid *et al.*, where the jury so found, and affirm the case of Butler *et al.* vs. Weathers, where they have found differently.

WARNER, J., concurring.

I concur in the judgment of the Court affirming the judgment of the Court below in the case of Butler & Howell vs. Weathers, and in reversing the judgment of the Court below in the two cases of Flipper vs. Reid and McFarland, and Thornton & Co. vs. Solomon & Faulk. These several cases

Butler *et al.*, *vs.* Weathers.

involve the construction of the first section of the Relief Law of 1868. That law, in my judgment, as applicable to all contracts made prior to the first day of June, 1865, is unconstitutional and void, for the reasons expressed in my dissenting opinion in the case of *Cutts & Johnson vs. Hardee*, 38*th Ga. Rep.*, 381.

In the case of Butler & Howell vs. Weathers, the defendants proved by *uncontradicted* evidence, on the trial thereof, that they had lost property, during the war to the amount of $4,500 00 each, making $9,000 00, upon the faith of which the credit was given to them. The jury found for the plaintiff the full amount of the note. The defendants in the Court below moved for a new trial on the ground that the verdict was contrary to law and the evidence, and upon the further ground, that the jury had disregarded the provisions of the Relief Act. The Court overruled the motion, which is assigned as error here. In the case of Thornton vs. Solomon & Faulk, the defendants plead and proved on the trial their respective losses by the war, as provided in the Relief Act, and the jury, by their verdict, *reduced* the amount of the plaintiff's debt, whereupon the plaintiff moved for a new trial, which the Court below refused, which is now assigned for error here. In the case of Flipper vs. Reid & McFarland, the same question was involved as in Thornton vs. Solomon & Faulk, the jury having *reduced* the plaintiff's debt on account of losses proved to have been sustained by the defendants, as provided by the Relief Act of 1868.

This Act of the Legislature expressly declares, that in all suits upon contracts made prior to the first day of June, 1865, it shall and may be *lawful* for the parties, in all such cases, to give *in evidence* to the jury, amongst other things, the destruction or loss of property upon the faith of which the credit was given, and how and in what manner the property was destroyed or lost, or by whose default, and in all such cases the jury shall have *power to reduce the amount of the debt or debts sued for*, according to the equities of each case, and render such verdicts as to *them* shall appear just and equitable. Such is the clearly expressed will of the Legis-

lature, and if I believed with the majority of the Court, as they held and decided in the case of *Cutts & Johnson vs. Hardee*, that this Act of the Legislature is a *constitutional* and *valid law*, then it would be my sworn duty, as a judicial officer, to enforce it in accordance with the true intent and meaning thereof. I would not *nullify* and render *nugatory* the plain and unambiguous provisions of a *constitutional law* prescribed by the supreme power of the State. What that Act declares shall be *lawful evidence* to be submitted to the jury, I would recognize as *lawful* evidence, and see to it that the juries should not disregard it in rendering their verdicts. If I believed that Act to be a *constitutional* and *valid* law, I would *reverse* the judgment of the Court below in the case of Butler & Howell vs. Weathers, as being contrary to the evidence in that case; and in the case of Thornton vs. Solomon & Faulk, and in the case of Flipper vs. Reid & McFarland, I would *affirm* the judgments in both of those cases as being in accordance with the evidence declared to be *lawful evidence* by the plain provisions of that Act.

But, believing as I do, that the Act of 1868 is *unconstitutional* and *void*, and that the evidence authorized by it as a *defense* to suits upon contracts made prior to June, 1865, is not *legal* evidence for the purpose of *reducing* the amount and value of such contracts, I concur with the majority of the Court in affirming the judgment of the Court below in Butler & Howell vs. Weathers, and concur with them in the reversal of the judgments of the Court below in both the other cases.

BROWN, C. J., concurring.

While I hold that the first section of the Relief Act of 1868 is constitutional, and that the evidence as therein specified may go to the jury, I do not hold that proof of any single fact therein enumerated will authorize the jury to reduce the debt, unless it is such a fact as raises an equity between the parties to the record. The simple fact that the defendant lost property during the war, without connecting

the plaintiff with the loss, does not raise such an equity between the parties as the jury has a right to adjust by reducing the amount of the debt.